**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          **Plaintiff,**<br><br>     v.<br><br>**$14,087.65 IN FUNDS SEIZED FROM BANK OF AMERICA ACCOUNT ENDING IN 0326,**<br><br>**$4,511,510.55 IN FUNDS SEIZED FROM BANK OF AMERICA ACCOUNT ENDING IN 9077,**<br><br>**$310,284.33 IN FUNDS SEIZED FROM PNC BANK ACCOUNT ENDING IN 7674, and**<br><br>**$498,459.84 IN FUNDS SEIZED FROM PNC BANK ACCOUNT ENDING IN 8764,**<br><br>          **Defendants.** | **Civil Action No. 24-cv-624**<br><br>**UNDER SEAL** |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

***COMES NOW***, the plaintiff United States of America, by and through the United States Attorney for the District of Columbia, and brings this verified complaint for forfeiture in a civil action *in rem* against the defendant property, to wit: $14,087.65 in funds seized from Bank of America Account ending in 0326 ("Target Account 1"), $4,511,510.55 in funds seized from Bank of America Account ending in 9077 ("Target Account 2"), $310,284.33 in funds seized from PNC Bank Account ending in 7674 ("Target Account 3"), and $498,459.84 in funds seized from PNC Bank Account ending in 8764 ("Target Account 4"), collectively, the "Defendant Funds", which law enforcement seized on or about December 5, 2023. In further support of its cause, the plaintiff alleges as follows:

## NATURE OF THE ACTION AND STATUTORY BASIS FOR FORFEITURE

1. This *in rem* forfeiture action arises out of an investigation by federal law enforcement agencies, including the United States Secret Service ("USSS"), into wire fraud, bank fraud, and money laundering in violation of 18 U.S.C. §§ 1343, 1344(2), 1956(a)(1)(B)(i), and 1957, and a conspiracy to commit these offenses, in violation of 18 U.S.C. §§ 371, 1349, and 1956(h).

2. For the reasons set forth below, the Defendant Funds are subject to forfeiture as property constituting or derived from proceeds traceable to bank and wire fraud, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984. In addition, the Defendant Funds are subject to forfeiture as property involved in an actual or attempted money laundering transaction, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984. The Defendant Funds are currently in the custody of the USSS.

3. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7) is forfeitable. A violation of 18 U.S.C. § 1343 and 1344, or a conspiracy to commit such offenses, constitute specified unlawful activity under 18 U.S.C. § 1956(c)(7)(A) as an offense listed in 18 U.S.C. § 1961(1)(B).

4. Title 18 U.S.C. § 1343 provides that whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

5. Title 18 U.S.C. § 1344 provides that whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

6. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957, or any property traceable to such property, is subject to civil forfeiture. In addition, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in a violation of 18 U.S.C. §§ 1956 or 1957, or any property traceable to such property, is subject to criminal forfeiture. Forfeiture pursuant to these statutes applies to more than just the proceeds of the crime. These forfeitures encompass all property "involved in" the crime, which can include untainted funds that are comingled with tainted funds derived from illicit sources.

7. Title 18 U.S.C. § 1956(a)(1)(B)(i) provides in relevant part that "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity— . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" shall be guilty of a federal offense. This offense is sometimes referred to as concealment money laundering. The term "specified unlawful activity" is defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1), and it includes violations of 18 U.S.C. § 1343 (Wire fraud) and 18 U.S.C. § 1344 (Bank fraud).

8. Title 18 U.S.C. § 1957 provides in relevant part that "[w]hoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity" shall be guilty of a federal offense. Because the offense consists of spending the proceeds of specified unlawful activity, § 1957 is sometimes referred to as the Spending Statute. Violations of § 1957 are considered money laundering offenses.

9. Title 18 U.S.C. § 1956(h) punishes any conspiracy to violate 18 U.S.C. § 1956 or 18 U.S.C. § 1957.

10. Regarding the civil forfeiture of fungible property, 18 U.S.C. § 984 provides that funds deposited in an account in a financial institution that are found in the same account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture so long as the action is commenced within one year from the date of the offense.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction of this civil action by virtue of 28 U.S.C. § 1345, because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress, as well as by virtue of 28 U.S.C. § 1395, because the property was originally sent by the victim into Target Account 1, which is a U.S.-based bank account controlled by an attorney practicing in the District of Columbia. On or about December 5, 2023, the United States seized the Defendant Funds from the respective banks where Target Accounts 1 through 4 are maintained. The Defendant Funds are currently being held in the customs suspense account of the U.S. Treasury Executive Office for Asset Forfeiture.

12.    Venue is proper in this District by virtue of 28 U.S.C. § 1355(b)(1), because acts or omissions giving rise to the forfeiture occurred in the District of Columbia.

13.    Any court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action.  28 U.S.C. § 1355(d).

## STATEMENT OF FACTS

14.    The United States is investigating allegations that certain unknown bad actor(s) tricked VICTIM 1, a company called "Springleaf Enterprises Inc.," which is a subsidiary of a Saudi Arabia-based holding company known as the "Al Jomaih Holding Company," into sending over seven million dollars via wire transfer to a bank account controlled by a Washington, D.C.-based attorney (ATTORNEY 1), who was duped into facilitating this scheme.

15.    The investigation has revealed that VICTIM 1 employs a United Kingdom-based capital firm called Capital Partnership Ltd. (CAPITAL FIRM 1) to manage its capital investments. There is an established and ongoing relationship between VICTIM 1 and CAPITAL FIRM 1 related to capital investments. On October 18-19, 2023, unknown bad actor(s) posing as employees of CAPITAL FIRM 1 sent emails from spoofed email accounts instructing an employee of VICTIM 1 to make previously arranged payments to a new bank account, writing, "Apologies for being a bother, but we have just been notified that the Northern Trust Bank Account is currently unable to receive wires in at the moment." That email and subsequent emails provided alternative settlement instructions that directed the funds to be sent to Target Account 1, which is a Bank of America Interest on Lawyers' Trust Account ("IOLTA") utilized by ATTORNEY 1.

16. On October 23, 2023, following the instructions received from these spoofed email accounts, VICTIM 1 sent a wire in the amount of $7.6 million from their Geneva, Switzerland-based HSBC Bank account to Target Account 1.

17. The investigation to date, including interviews with ATTORNEY 1, suggest that ATTORNEY 1 was an unwitting participant in this fraud scheme/conspiracy. In or around February 2023, ATTORNEY 1 began communicating over WhatsApp with an an individual identifying as "Henry Caballaro." Caballaro informed ATORNEY 1 that he was an attorney in Spain who acts as a broker to bring buyers and sellers together and wanted ATTORNEY 1 to be the escrow attorney for deals. Caballaro introduced ATTORNEY 1 to "Saman Pazooki" of Zodix Trading Solutions LLC and an attorney based in New York ("ATTORNEY 2"). On or about October 19, 2023, ATTORNEY 1 agreed to be the escrow attorney for a private investment transaction agreement between VICTIM 1 and Zodix Trading Solutions LLC. As noted above, on October 23, 2023, as a result of instructions received from an unknown bad actor utilizing spoofed email accounts, VICTIM 1 sent a wire in the amount of $7.6 million to ATTORNEY 1's IOLTA account.

18. On October 24, 2023, there was a wire in the amount of $800,000 sent from Target Account 1 to Target Account 3. Records provided by PNC Bank pertaining to Target Account 3 revealed the account owner to be Zodix Trading Solutions LLC with sole signer Saman Pazooki. That same day, October 24, 2023, $500,000 was transferred from Target Account 3 to Target Account 4. According to records obtained from PNC, as of late November/early December 2023 approximately $310,284.33 remained in Target Account 3.

19. Records provided by PNC pertaining to Target Account 4 revealed the account owner to be Saman Pazooki. According to records obtained from PNC, as of late November/early December 2023, approximately $498,459.84 remained in Target Account 4.

20. Bank of America records reflect that on October 27, 2023, $2,218,920 was transferred from Target Account 1 (ATTORNEY 1's account) to Target Account 2 (ATTORNEY 2's account). Two additional teller transfers on October 31, 2023 for the amounts $2,286,160 and $2,218,920 were sent to Target Account 2. ATTORNEY 1 and ATTORNEY 2 were introduced over WhatsApp by the person claiming to be Caballaro. ATTORNEY 1 and ATTORNEY 2 understood that ATTORNEY 1 was transferring the funds to ATTORNEY 2 for the purchase of various cryptocurrency investments and other investments.

21. Between October 27, 2023 and October 30, 2023, ATTORNEY 2 wired approximately $2.7 million, over the course of three wires, to CoinZoom for conversion to Bitcoin. CoinZoom was able to reverse the third wire, in the amount of $500,000.[1] As of late November/early December 2023, approximately $4,511,510.55 of the funds transferred from Target Account 1 remained in Target Account 2.

22. As of late November/early December 2023, $14,087.65 in funds from the original $7.6 million transfer from VICTIM 1 remained in Target Account 1.

---

[1] Records provided by BOA pertaining to Target Account 2 revealed that Grossman disbursed a portion of the fraudulently obtained funds via multiple wires to CoinZoom, Inc, beginning on or around October 30, 2023. The first wire in the amount of $1,718,920 was sent to CoinZoom, Inc beneficiary xxx9149. The second wire in the amount of $500,000 was sent to CoinZoom, Inc beneficiary xxx9149. Both wires were received by CoinZoom, Inc on or around October 30, 2023. On or around November 2, 2023, the third wire in the amount of $500,000 was sent to CoinZoom, Inc beneficiary xxx9149. CoinZoom, Inc was able to reverse the third of the $500,000 wires and return the funds to Target Account 2.

23. On or about December 5, 2023, the United States seized $14,087.65 from Target Account 1, $4,511,510.55 from Target Account 2, $310,284.33 from Target Account 3, and $498,459.84 from Target Account 4, collectively, the "Defendant Funds."

### COUNT ONE – FORFEITURE OF DEFENDANT FUNDS
(18 U.S.C. §§ 981(a)(1)(C) and 984)

24. The factual statements made in paragraphs 1 through 23 are re-alleged and incorporated by reference herein.

25. The Defendant Funds are property which constitutes or is derived from proceeds traceable to wire fraud and wire fraud conspiracy, in violation of 18 U.S.C. §§ 1343 and 1349.

26. The Defendant Funds are property which constitutes or is derived from proceeds traceable to bank fraud and bank fraud conspiracy, in violation of 18 U.S.C. §§ 1344 and 1349.

27. As such, the Defendant Funds are subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.

### COUNT TWO – FORFEITURE OF DEFENDANT FUNDS
(18 U.S.C. §§ 981(a)(1)(A) and 984)

28. The factual statements made in paragraphs 1 through 23 are re-alleged and incorporated by reference herein.

29. The Defendant Funds are property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (h), and 1957, that is, a conspiracy to conduct or attempt to conduct financial transactions involving the proceeds of specified unlawful activity, to wit, wire fraud and conspiracy to commit wire fraud, and bank fraud and conspiracy to commit bank fraud, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transaction represented the

proceeds of some form of unlawful activity; and a conspiracy to knowingly engage in or attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 derived from specified unlawful activity, to wit, wire fraud and conspiracy to commit wire fraud.

30. As such, the Defendant Funds are subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that notice issue on the Defendant Property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that a warrant of arrest *in rem* issue according to law; that judgment be entered declaring that the Defendant Property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

_____
Kathryn L. Rakoczy, D.C. Bar No. 994-559
Rick Blaylock, Jr, TX Bar No. 24103294
Phone Rakoczy: (202) 252-6928
Phone Blaylock: (202) 252-6765

Kathryn.Rakoczy@usdoj.gov
Rick.Blaylock.Jr@usdoj.gov

*Attorneys for the United States*

## **VERIFICATION**

I, Alan Ottarson, a Special Agent with the USSS, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement agents and that everything represented herein is true and correct to the best of my knowledge and belief.

Executed on this 5th day of March 2024.

_____
Alan Ottarson
Special Agent
United States Secret Service